CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
NOV - 5 2010
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| SAMUEL ANTHONY, <br> Petitioner, | Civil Action No. 7:10-cv-00266 |
| v. | **MEMORANDUM OPINION** |
| WARDEN, U.S.P. LEE, <br> Respondent. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Samuel Anthony, a federal prisoner proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Petitioner alleges that prison officials convicted him of an institutional infraction in violation of due process. The respondent filed a motion for summary judgment, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I grant the respondent's motion and deny the petition.

I.

The record reveals the following facts. On October 9, 2008, a correctional officer saw petitioner and another inmate fighting and filed an incident report about it. The officer noted that petitioner held a four to five inch long shank in his right hand. Prison officials suspended the institutional charge proceedings against petitioner for possession of a weapon and fighting because they referred the matter to the Federal Bureau of Investigations and the U.S. Attorney's Office, which released the investigation back to prison officials on November 18, 2008.

The next day, prison officials suspended proceedings again in order to have the reporting officer re-write the incident report to better describe the fighting. However, prison officials did not determine until December 11, 2008, that the reporting officer was recalled into military service. Thus, prison officials served petitioner on December 11, 2008, with a copy of the original incident report. The Investigating Lieutenant advised petitioner of his rights, including

to make a statement, but petitioner declined to say anything.

Petitioner attended his Unit Discipline Committee[1] ("UDC") hearing on December 13, 2008, and gave the committee a written statement.[2] The UDC referred the matter to the Discipline Hearing Officer[3] ("DHO") with a recommended disposition, if warranted, of sixty days' disciplinary segregation and loss of all good conduct time and telephone and commissary privileges. On December 13, 2008, staff gave petitioner a Notice of Disciplinary Hearing before the DHO. Petitioner indicated on the form that he wanted to call as a witness the other inmate he was accused of attacking.

The DHO conducted the hearing on March 4, 2009. The DHO advised petitioner of his rights, to which petitioner acknowledged his understanding. Petitioner declined the assistance of a staff representative but wanted to call his witness. The DHO noted that the U.S. Attorney's Office delayed the BOP proceedings as it investigated the incident for possible prosecution. The DHO further noted that the BOP delayed the proceedings after the U.S. Attorney's Office released its investigation because the BOP requested a more detailed description of the fighting from the reporting officer. The DHO determined the delay did not impede Petitioner's ability to prepare a defense and continued the hearing. Petitioner gave the DHO a written statement and told the DHO that he was not guilty and due process was violated before the hearing. Petitioner's

---

[1] A UDC consists of one or more staff members with the authority to hold an initial hearing after an investigation of inmate misconduct. 28 C.F.R. §§ 541.2(b), 541.15.

[2] Petitioner alleged in the note that staff violated due process by failing to give him an administrative detention order that explained his placement in segregation. Petitioner requested the institutional charges be dismissed and expunged from his record. (Pet. Ex. A.)

[3] The DHO is an independent hearing officer who is responsible for conducting discipline hearings and who imposes sanctions for inmate misconduct. 28 C.F.R. § 541.2(c).

2

witness told the DHO that he and petitioner were just "horse playing" and not fighting.

The DHO considered this witness' statements, the reporting officer's written statements, Inmate Injury Assessment forms, photographs, prison staff's memorandums, and petitioner's statements. The DHO found petitioner committed the prohibited act of possessing a weapon (code 104) and fighting with another person (code 201). The DHO largely based his decision on the facts presented in the body of the incident report, and the Injury Assessment forms, which revealed the other inmate's abrasions to his knees and back and a cut or puncture wound to his scalp. The DHO punished petitioner by recommending a disciplinary transfer and ordering the disallowance of sixty-seven days' good conduct time, ninety days' disciplinary segregation, twelve months' loss of commissary privileges, twelve months' loss of telephone privileges, and twelve months' loss of visiting privileges. The DHO reasoned that possession of a weapon and fighting with another person pose a substantial threat to the secure and orderly operation of a facility, promote disrespect for authority, seriously detract from staff's ability to maintain control of an area, and interferes with the completion of a staff member's duty. The DHO noted that the imposed punishments have been proven effective in deterring this type of negative behavior. Petitioner appealed, and his institutional conviction was administratively affirmed.

II.

A.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[4] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).

---

[4]The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Petitioner did not file a counter-affidavit or other verified document.

4

Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

B.

To prove that he is entitled to relief under § 2241, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21 (1975) (finding that "[a] necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his] custody violated the Constitution, laws, or treaties of the United States"). Petitioner argues that (1) his due process rights were violated; (2) he was denied the ability to marshal a defense due to withheld evidence; (3) he was placed in the Special Housing Unit ("SHU") without a detention order; (4) he was not given any documented reason for the delay in his proceedings during his UDC hearing; (5) he was not given a copy of the UDC proceedings; (6) his Wolff rights were violated when he did not receive during the DHO proceedings all documents about his case; and (7) the DHO's findings were based on doctored staff memorandums.

5

A district court reviewing a prison disciplinary hearing officer's finding "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). Furthermore, federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Those findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981). See Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984) (stating an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute).

Petitioner's claim that the evidence was insufficient to sustain the institutional conviction is not supported by the record. The DHO noted that petitioner denied the charges, the correctional officer was under a legal obligation to be truthful, and it was in petitioner's benefit to deny the charge. Petitioner was seen holding a shank, the victim sustained a cut and other abrasions, and petitioner also received wounds, supporting the inference of a fight. Furthermore, an officer saw petitioner and another inmate grappling each other and had to physically separate them. Therefore, the record supports the DHO's findings of guilt to the two charges. Moreover, petitioner fails to provide any support for his conclusion that prison officials doctored staff memorandums.

Due process mandates several procedural safeguards before an inmate may be punished with the loss of earned good conduct time for violating prison disciplinary rules. Wolff v.

McDonnell, 418 U.S. 539, 557 (1974). In such circumstances, prison officials must provide the inmate with (1) advance written notice of the charge against him; (2) a written record of the disciplinary committee's findings and the evidence relied on in convicting him; and (3) the right to call witnesses in limited circumstances. Id. at 564-70. Furthermore, an inmate is entitled to have the charges against him decided by a fair and impartial tribunal. Id. at 570-71.

A review of the institutional proceedings establishes that petitioner was afforded the due process described in Wolff. Petitioner received a copy of the incident report on December 11, 2008, and the DHO hearing was held on March 4, 2009. The DHO officer provided petitioner an opportunity to make a statement and to call witnesses. Petitioner called a witness, and the DHO considered the witness's testimony. The DHO report documents the specific evidence relied upon and the basis for the finding, the DHO's decision, and the reasons for the decision. Prison staff gave petitioner a copy of the DHO's report. Accordingly, petitioner received the due process guaranteed by Wolff.

Petitioner alleges that prison staff withheld evidence of a report that he believes exonerated him. A memorandum written by Lieutenant Bauder and addressed to the Warden and Captain Arnold allegedly states a different inmate possessed the shank. However, this document recites the evidence from other correctional officers who all allege that petitioner held the shank. Even if the introductory paragraph of the document refers to another inmate, the overwhelming weight of the eyewitness' statements the DHO considered alleged that petitioner held the shank. For example, Officer Meadows said that he saw the shank in petitioner's hand, he ordered petitioner to drop the shank, and petitioner complied. Moreover, the other inmate sustained cuts to his scalp and clothing immediately after grappling with petitioner. To the extent the DHO

7

misidentified petitioner as Iman Hardy in two minor instances in his report, the entire record otherwise overwhelmingly implicates only the petitioner as possessing the shank. Accordingly, the evidence supports the finding that petitioner possessed the shank, and petitioner suffered no prejudice from not receiving the document naming another inmate. See United States v. Hastings, 134 F.3d 235, 240 (4th Cir. 1998) (explaining that prejudice is shown when it actually affected the outcome of the proceedings).

Petitioner complains that his placement in the SHU without a detention order; not receiving a documented reason for the delay in his UDC hearing; and not receiving a copy of the UDC proceedings violated prison procedures and warrants expungement of his conviction. A Bureau of Prisons ("BOP") official's failure to abide by BOP regulations by itself does not present a constitutional claim. See United States v. Caceres, 440 U.S. 741, 751-52 (1978) (stating a violation of an agency regulation does not immediately constitute a constitutional claim). Petitioner must establish that a prison staff's violation of a disciplinary regulation resulted in prejudice. See Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997); White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (9th Cir. 1988); Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994) ("[T]his court is reluctant to overtax and/or hamstring officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate."); Borre v. Garrison, 536 F. Supp. 76 (E.D. Va. 1982).

Petitioner fails to establish prejudice about his claims about placement in the SHU without a detention order; not receiving a documented reason for the delay in his UDC hearing; and not receiving a copy of the UDC proceedings. The record establishes that petitioner received

an administrative detention order on the date of the incident that indicated he was placed in administrative detention during an investigation of the charges. Furthermore, petitioner fails to establish sufficient prejudice and fails to show how not receiving an administrative detention order negatively impacted the outcome of his disciplinary hearing beyond his unsupported conclusion that he could not marshal a defense. Moreover, petitioner received a copy of the Incident Report on December 11, 2008, and told via the DHO's report the reason for the delay. Finally, petitioner did not sufficiently raise the delay issue to the DHO, was fully advised of the procedural rights available to him throughout the proceedings, and does not describe how the delay impeded his defense. Accordingly, respondent is entitled to summary judgment because the record as a whole could not lead a rational trier of fact to find in petitioner's favor.

III.

For the foregoing reasons, I grant the respondent's motion for summary judgment and deny petitioner's petition for a writ of habeas corpus.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the petitioner and counsel of record for the respondent.

**ENTER**: This 5th day of November, 2010.

Senior United States District Judge